Howard SIMIEN

v.

**CHEMICAL WASTE MANAGEMENT, INC.**

No. 97–2298.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Sept. 11, 1998.

Howard Simien, Lake Charles, LA, Wendell C. Woods, Baton Rouge, LA, for Howard Simien, plaintiff pro se.

Anne J. Crochet, Baton Rouge, LA, Dean J. Schaner, Haynes & Boone, Houston, TX, for Chemical Waste Management Inc., defendant.

### MEMORANDUM RULING

TRIMBLE, District Judge.

Presently before the court is a Motion for Summary Judgment filed by Chemical Waste Management ("CWM") and Bernard D. Laverentz ("Laverentz"), defendants, in an action by Howard Simien in which Simien is claiming that he was wrongfully terminated because of his race in violation of Title VIII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"). The plaintiff filed an Opposition to the Motion for Summary Judgment and the defendants filed a reply to that Opposition.

### FACTS

Simien was employed by CWM hazardous waste Treatment, Storage and Disposal ("TSD") facility for 13 years. Simien alleges that he was discharged because of his race. CWM alleges that Simien was discharged because he failed to properly dispose of waste in the truck he was driving. Simien argues that this alleged violation, which was asserted as grounds for termination, was pretextual as the violation was authorized by a supervisor and similar acts had been committed by white employees who were either not terminated or were treated more favorably under the same circumstances.

Simien initially filed *pro se,* but in April of 1998 retained counsel to represent him in this matter. Retained counsel, Mr. Woods, states in his memorandum that he sought

and received an extension of time from the defendants within which to respond to propounded discovery. Mr. Woods claims that he was given until June 12 to respond and did so by federal expressing the responses to his opposing counsel on June 11. (See Exh. A Woods Affidavit). Defense counsel argues that the defendants' requests for admissions were not timely answered by the plaintiffs and are therefore deemed admitted pursuant to F.R.Civ.P. 36(a).

## LAW

### Deemed Admitted

On February 26, 1998, the defendants propounded their first Request for Admissions. That request included a warning that if a response was not received in thirty days, the requests would be deemed admitted pursuant to F.R.Civ.P. 36(a). Simien failed to answer while he was *pro se.* He retained counsel at least 26 days before the responses were due, but still failed to respond until almost two and a half months after the deadlines. Simien's counsel never requested an extension of time to file the responses. (Schaner Aff. § 4).[1]

Fed.R.Civ.P. 36(a) provides that "[t]he matter [contained in a request] is admitted unless, within 30 days after the service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney. . . ." Rule 36(b) allows a court "on motion" to permit the withdrawal or amendment of admissions "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admissions fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the

merits." It has been noted that Rule 36(b) "places a burden on both the party who makes the admission and the party who obtains the admission. The party making the admission must show that the presentation of the merits will be subserved. The party obtaining the admission must satisfy the court that the withdrawal or amendment of the admission will prejudice him." *Coca–Cola Bottling Co. v. Coca–Cola Co.,* 123 F.R.D. 97, 102 (D.Del.1988).

Counsel for the plaintiff has not filed a formal motion for withdrawal of the admissions pursuant to Rule 36(b). In his opposition, counsel for Simien points out that Simien was proceeding *pro se* when he first received the requests. Then, Counsel for Simien was not retained until March 30, 1998, over a month after the Requests were sent to the plaintiff. Counsel for the defendants sent a letter to Simien's counsel on May 22, 1998, advising him that the responses were two months overdue and requesting that they be submitted by June 5, but reminding counsel for Simien that under the Federal Rules, they were already deemed admitted. Counsel for Simien requested an additional week until June 12, and mailed them on June 11.

Counsel for the plaintiff stated that plaintiff's employment causes him to be out of Lake Charles often. Counsel practices in Baton Rouge. Therefore, it takes time for them to communicate and there are delays in delivering messages, obtaining signatures and gaining information from his client. Although these reasons *may* establish excusable neglect for the failure of counsel to respond to the admissions in a timely manner, a showing of excusable neglect does not fulfill the burden under Rule 36(b) of demonstrating that the presentation of the merits of the action would be subserved by the withdrawal of the admissions.[2] "In considering whether the presentation of the merits will be im-

---

1. Plaintiff's counsel asserts that he was granted an extension, but the letter that he attached is not conclusive evidence of this extension as Rule 36(a) requires a written agreement to lengthen the time period for responding to Requests for Admissions.

2. Counsel for the plaintiff states that he had a "gentlemen's agreement" with counsel for the

defendant that his client would not suffer any adverse consequences from his delay in filing the admissions. This understanding, however, is not evidenced by the letter *the plaintiff* submitted from defense counsel in which he reminded counsel for the plaintiff that under the rules, his responses were already deemed admitted.

proved by permitting an admissions to be revised, courts have generally sought to determine whether the admission is contrary to the record of the case." *Coca–Cola*, 123 F.R.D. at 103; *Branch Banking and Trust Company v. Deutz–Allis Corp.*, 120 F.R.D. 655, 658–659 (E.D.N.C.1988); *Clark v. City of Munster*, 115 F.R.D. 609 (N.D.Ind.1987).

▮▮▮ Because neither the plaintiff nor his counsel answered the Request for Admissions within 30 days and Mr. Woods did not file a Rule 36(b) motion, this court holds that the matters at issue shall be deemed admitted. *Walsh v. McCain Foods, Ltd.*, 81 F.3d 722, 726 (7th Cir.1996). Such default admissions "can serve as the factual predicate for summary judgment." *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir.1987); See also *Dukes v. South Carolina Ins. Co.*, 770 F.2d 545 (5th Cir.1985). Rule 36(b) provides that a matter admitted is "conclusively established." Fed .R.Civ.P. 36(b).[3] Summary judgment is provided for in Rule 56. A party cannot attack issues of fact established in admissions by resisting a motion for summary judgment. See, e.g., *Donovan v. Carls Drug Co.*, 703 F.2d 650 (2d Cir.1983). Affidavits and depositions entered in opposition to summary judgment that attempt to establish issues of fact cannot refute default admissions. *Kasuboski*, 834 F.2d at 1349.[4]

*Summary Judgment*

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In an employment discrimination case, the focus must be on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff. *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 447 (5th Cir.1996); *Armstrong v. City of Dallas*, 997 F.2d 62, 65–66 (5th Cir.1993).

Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). The evidentiary framework for Title VII claims was established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A Title VII plaintiff bears the initial burden to prove a prima facie case of discrimination by a preponderance of the evidence. *Id.* at 801–803, 93 S.Ct. at 1824.

Under the *McDonnell Douglas* framework, the court employs a three-part test designed to determine a defendant's motivation in taking the challenged action, in this case terminating Simien. *See McDonnell Douglas*, 411 U.S. at 803–04, 93 S.Ct. at 1824–25. First, the plaintiff must establish a prima facie case by proving the elements of the discrimination claim. If the plaintiff proves his prima facie case, a presumption of discrimination arises. See *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir.1993). The burden of production then shifts to the defendant to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged discriminatory action. See *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1478 n. 19 (5th Cir.1992). A defendant meets this burden by proffering admissible evidence of an explanation that would legally be sufficient to justify a judgment for the defendant. See *Guthrie v. Tifco Indus.*, 941 F.2d 374, 376 (5th Cir. 1991). This does not require that the defendant persuade the trier of fact that there was no intentional discrimination; the defendant need only produce evidence on that point. See *Hicks*, 509 U.S. at 507–508, 113 S.Ct. at 2747–48.

If a defendant satisfies this burden, the presumption of discrimination established by the plaintiff's prima facie case is defeated.

---

**3.** Admissions obtained under the Federal Rules of Civil Procedure may be offered as evidence at trial, but are still subject to all pertinent objections to admissibility. *Walsh v. McCain Foods, Ltd.*, 81 F.3d 722, 725 (7th Cir.1996).

**4.** This court agrees with the 7th Cir. in *Kasuboski* in recognizing the harshness of this result. "The failure to respond to admissions can effectively deprive a party of the opportunity to contest the

merits of a case. This result, however, is necessary to insure the orderly disposition of cases; parties to a lawsuit must comply with the rules of procedure. In addition, the harshness is tempered by the availability of the motion to withdraw admissions, a procedure which the defendants did not employ." *Kasuboski*, 834 F.2d at 1349.

See *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. The plaintiff's burden of persuasion arises, and he must produce evidence that the defendant's proffered reasons were merely pretextual, the real reason for the action having been based on an impermissible animus. See *Id.* at 256, 101 S.Ct. at 1095; *Bodenheimer,* 5 F.3d at 959. The plaintiff may succeed at this juncture, either by persuading the court that a discriminatory reason more likely motivated the defendant, or by showing that the defendant's proffered explanation is not entitled to credence. See *Burdine,* 450 U.S. at 256,, 101 S.Ct. at 1095. The ultimate burden of proving intentional discrimination rests at all times with the plaintiff. See *Hicks,* 509 U.S. at 507, 113 S.Ct. at 2749.

■ A plaintiff may prove a prime facie case of discrimination in the work-rule context, Simien must show that "either he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly." *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1090 (5th Cir.1995); *Green v. Armstrong Rubber Co.,* 612 F.2d 967, 968 (5th Cir.), *cert. den.,* 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102 (1980). Simien argues that he did not violate the rule because his supervisor authorized his actions and that, even assuming that he had violated policy, similarly situated white employees were not disciplined for the same conduct.

■ To establish a prime facie case, Simien must show that white employees were treated differently under circumstances "nearly identical" to his. *Little v. Republic Refining Co.,* 924 F.2d 93, 97 (5th Cir.1991). The plaintiff argues that "[t]he petition of the plaintiff and the deposition of plaintiff refer to acts of non-targeted group persons exhibiting similar actions i.e. improperly mixing hazardous waste, but those persons received little or no disciplinary action." Although counsel for the plaintiff did not refer to the sections of the deposition which specifically refer to similarly situated white employees, he did attach deposition excerpts. On pages 43 and 44 of Simien's deposition, he states that "[w]e would have occasions where we would come in on our shift and the pits wouldn't be emptied. They [sic] would be left half a load sometime in the pits. We'd report it. He'd go dig it up and find out who did it, and nothing was done to these people." Page 44, lines 7–11. Simien went on to testify that this was a "regular, regular, routine" occurrence. P. 44, lines 15–16. There was little more evidence presented to substantiate this claim and unsubstantiated assertions are not competent summary judgment evidence. *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.)., *cert. den. Forsyth v. Vines,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994); *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir.1996) (en banc) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden."); *Grizzle v. Travelers Health Network, Inc.,* 14 F.3d 261, 268 (5th Cir.1994) (An employee's self-serving generalized testimony stating her subjective belief that discrimination occurred "is simply insufficient to support a jury verdict in plaintiff's favor."); *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1449 (5th Cir.1993) ("Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, ... if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.") (citations omitted). In response to motions for summary judgment, it is therefore incumbent upon the moving party to present evidence— not just conjecture and speculation—that the defendant retaliated and discriminated against the plaintiff on the basis of race. *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1079 (5th Cir.1994) (en banc).

Simien may also establish a prima facie case by showing that he did not violate the work-rule for which he was disciplined. *Green,* 612 F.2d at 968. Simien asserts that he advised his supervisor that he had not emptied the full load and that he placed the truck in storage for the night with his supervisor's knowledge and approval. Simien depo. pp. 41–43. Again, the plaintiff offers no corroborating evidence apart from his deposition testimony, and the admissions by the plaintiff, which were deemed admitted, con-

stitute evidence that Simien did violate company rules and procedures.

Even if Simien's deposition testimony created a prima facie case, CWM responds by insisting that there was no racial motivation in its decision to terminate Simien. The affidavit of Michael D. Glackin, Director of Human Resources, indicates that he conducted a full investigation of the allegations, which includes video tapes of the load and a review of Simien's personnel record. Before the incident leading to the termination, Simien had other disciplinary problems. (See Ex 7, 8, and 9, Driving Suspension, Order Suspension and Damage Suspension). The investigation of this incident led to the conclusion by CWM management that Simien had flagrantly violated CWM's procedure and rules, and his violation placed CWM in a position where it could have violated environmental regulations had Mitchell (also African–American and the plaintiff's direct supervisor) not discovered the problem before the waste was deposited into the landfill. With this CWM has discharged its burden of production and the burden shifts back to Simien to prove that CWM's proffered reason is merely a pretext for discrimination. see *Hicks*, 509 U.S. 510, 113 S.Ct. at 2749, 125 L.Ed.2d 407.

Simien attempts to rebut CWM's nondiscriminatory reason by offering testimony of accounts of racial comments made about him. For the most part these accounts, contained in deposition excerpts, are hearsay. Simien relies on these alleged comments, a belief that he was entitled to commit four acts of misconduct before he could be discharged and a complaint about signatures that were allegedly missing from his discharge papers.

■ As stated by CWM, Louisiana is a deferral state and therefore, Louisiana employees must file discrimination charges within 300 days of the alleged unlawful employment practices. *Jackson v. Entergy Operations*, Inc.1998 WL 231019 (E.D.La. May 4, 1998). Simien filed his EEOC charge on October 29, 1996. Accordingly, he may only rely on alleged conduct occurring on or after January 3, 1996. *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536–38 (5th Cir.1998). Any conduct occurring before January 3, 1996, is time barred and cannot be relied upon to buttress his claims of discriminatory conduct.

■ The alleged conduct by Boyd Alleman, a former CWM employee, occurred prior to January 3, 1996.[5] Simien also referred to some paintings on his locker that occurred between 1990 and 1993, but which, by his own admission were not racial in nature. (Simien depo., p. 29–32). He also testified that Mr. Black, another former employee, had heard different managers refer to Simien as "that Black person down there." Simien was told that the managers said that they couldn't "get rid of him" because he was the "only one there." (Simien depo. p. 157, lines 18–25) and that they would sometimes use "the N word." (Simien depo., p. 160, lines 3–12). Simien never heard any of this personally, however, and did not know which managers said these things.

While Simien testified that he believed that he was entitled to four write-ups before he could be discharged, CWM policy states that discharge may result from the first offense. (Glackin Aff. § 11; Simien depo. at 102–103, Rules).

Finally, Simien complains that there were discrepancies on the signatures in the required paperwork. These signature discrepancies are irrelevant as Simien admitted that he did not empty the container and the resulting investigation came to the same conclusion.

It is important to note, as pointed out by CWM, that Simien's direct supervisor, who first discovered that Simien had not properly disposed of the waste, is also African–American. He also recommended Simien's discharge. (Laverentz Aff § 17; Glackin Aff. § 21). If an inference of race discrimination had been drawn from Simien's submitted summary judgment evidence, that inference would be dispelled by this knowledge. Simien's subjective knowledge that he was being

---

**5.** Page 44 of Simien depo, lines 7–16, indicate that Alleman knew of several times when load would not be completely emptied, but he did nothing to correct the situation or to discipline the offending drivers.

discriminated against on the basis of race is not sufficient to defeat a motion for summary judgment. *Grimes v. Texas Dept. of Mental Health,* 102 F.3d 137, 141 (5th Cir.1996).

Accordingly, for the reasons stated above, assuming that this court could find that Simien made a prima facie showing of Title VII discrimination based on race, CWM offered several legitimate reasons for Simien's termination. This court finds that summary judgment in favor of CWM should be granted in that Simien failed to adduce summary judgment evidence of pretext sufficient to rebut CWM's evidence of a legitimate, nondiscriminatory reason for discharging Simien.

■ The last issue to be discussed is whether Simien can sue Laverentz in his individual capacity under Title VII. Although this court issued a ruling in January of this year denying a motion to dismiss on behalf of Laverentz based on his hiring and firing authority, the Fifth Circuit decided *Huckabay v. Moore,* 142 F.3d 233 (5th Cir.1998), on May 22, 1998. The court in *Huckabay* stated that:

> Section 1981a does not create a new substantive right or cause of action. Rather, the plain language of the statute shows that it merely provided an additional remedy for "unlawful discrimination ... prohibited under ... 42 U.S.C. § 2000e–2 or 2000e–3." 42 U.S.C. § 1981a(1)(*l* ). Those sections of title VII, then, provide the underlying substantive right, a right that prohibits conduct only by "employers," "employment agencies," and "labor organizations." See 42 U.S.C.A. §§ 2000e–2, 2000e–3. Huckabay does not claim discrimination by either of the latter two, and our cases make it plain that the term "employer" does not include a hiring or supervisory official in his personal or individual capacity. *See Grant v. Lone Star Co.,* 21 F.3d 649, 651 (5th Cir.1994); *Harvey v. Blake,* 913 F.2d 226, 227 (5th Cir. 1990). *See also Miller v. Maxwell's Intl. Inc.,* 991 F.2d 583, 588 n. 2 (9th Cir.1993) (rejecting argument that § 1981a altered title VII scheme to allow individual liability for compensatory and punitive damages).

Even if Laverentz was an agent of CWM, and was liable under *respondeat superior,*

CWM would be liable, not Laverentz in his individual capacity. *See Garcia v. Elf Atochem North America,* 28 F.3d 446, 451 (5th Cir.1994); *Pfau v. Reed,* 125 F.3d 927, 934 (5th Cir.1997). Therefore, this court also finds that Simien's claim against Laverentz individually should be dismissed.