**Frank SANDERS, Plaintiff–Appellant,**

v.

**VILLAGE OF DIXMOOR, ILLINOIS,**
**Defendant–Appellee.**

No. 98–3728.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1999.

Decided May 13, 1999.

Kenneth N. Flaxman (argued), Chicago, IL, for Plaintiff–Appellant.

Robert M. Chemers, Pretzel & Stouffer, Chicago, IL, Daniel G. Wills (argued), Belgrade & O'Donnell, Chicago, IL, for Defendant–Appellee.

Brian Owsley (argued), Equal Employment Opportunity Commission, Office of General Counsel, Washington, DC, for Amicus Curiae.

Before EASTERBROOK, MANION, and EVANS, Circuit Judges.

MANION, Circuit Judge.

Frank Sanders sued the Village of Dixmoor, Illinois under Title VII of the Civil Rights Act, alleging racial discrimination due to discriminatory treatment and hostile environment. The district court granted Dixmoor summary judgment, concluding that Sanders failed to present sufficient evidence of a severe and pervasive hostile environment. The court did not address the discriminatory treatment issue, nor did the plaintiff move posttrial for the court to address that issue. Sanders appeals. We affirm.

Frank Sanders is a black male. He worked approximately four days per month for the Village of Dixmoor as a part-time police officer from 1991 until April of 1997. In 1997 the Village elected a new mayor. The Village Council replaced police chief Nicholas Graves with Joseph Falica. Sanders, who supported his good friend Graves, was not pleased with Graves' termination. When Graves and Falica met at the station to discuss the transition, Sanders was also present. He interrupted the discussion several times, demanding to know from Falica the new scheduling arrangements and what Sanders' particular role would be. Falica responded a couple of times, saying that the time was not appropriate to discuss the matter with Sanders. When Sanders persisted, a heated exchange followed, culminating with Falica exclaiming, "Nigger, you're suspended." Falica then ordered

Sanders out of the police station, but Sanders responded that he wasn't going anywhere. Falica reiterated, "[y]ou're suspended for 90 days." Sanders left and never returned. After exhausting his administrative remedies, he filed suit against the Village of Dixmoor under Title VII, alleging that "[t]he Chief of Police did not have any basis, other than plaintiff's race, to order plaintiff's suspension."

Dixmoor moved for summary judgment, arguing that Sanders had failed to present sufficient evidence of a hostile work environment based on race. Dixmoor also presented evidence and argued that Sanders was fired because of his insubordination, not because of his race. In a (barely) three-page reply brief, Sanders cited two cases for the proposition that the use of the word "nigger" alters the terms and conditions of employment. The district court granted Dixmoor summary judgment, concluding that the only evidence Sanders had presented of a hostile environment was Falica's statement "Nigger, you're suspended," and that this one instance of racial harassment was not sufficiently severe or pervasive to alter the conditions of employment and create an objectively hostile work environment.

Notably, the district court did not address the issue of whether Falica's use of "nigger" during the verbal altercation with Sanders was direct evidence of race discrimination in the suspension. In fact the district court concluded that "[p]laintiff does not argue that he was suspended because of his race or that using the word 'nigger' amounted to constructive discharge." More notably, Sanders did not at the time the court rendered its opinion, nor through a Rule 59 motion to reconsider, notify the court that it should address his argument concerning discriminatory treatment. Instead, Sanders now appeals the district court's decision granting Dixmoor summary judgment. However, he does not challenge the district court's conclusion that he failed to present sufficient evidence of an objectively hostile environment.[1] Rather, Sanders contends that summary judgment was inappropriate because he presented sufficient evidence that he was suspended because of his race. But as noted, the district court did not address this issue.

While Sanders' complaint was framed broadly enough to include a claim of a racially motivated suspension, at the summary judgment stage Sanders failed to alert the district court to this theory. "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir.1983). Here, Dixmoor moved for summary judgment arguing that Sanders had failed to present sufficient evidence of a hostile environment claim, and that his suspension was due to his insubordination and not his race. Sanders' response failed to address the issue of the suspension and instead focused on the use of the word "nigger," citing cases for the proposition that the word created a hostile environment in and of itself. Because Sanders did not notify the trial court of the theory he now advances—that he was suspended because of his race—he has waived any such claim there and on appeal. We therefore Af-

---

1. In an amicus brief the EEOC presents two arguments. Unlike Sanders' brief, the EEOC claims the district court erred by holding that the circumstances surrounding Falica's use of the word "nigger" were not sufficient to create a racially hostile work environment. But since Sanders did not raise the issue on appeal, the Commission has no party to support. In its argument asserting race discrimination the Commission claims it was the defendant who did not raise with the district court the race-based suspension claim. But as explained above, Dixmoor did make this argument and the plaintiff cannot sit idly by while the court states that the plaintiff is not asserting race-based suspension or constructive discharge. The issue was waived below.

FIRM the district court's grant of summary judgment to Dixmoor.

EVANS, Circuit Judge, dissenting.

Joseph Falica, the newly appointed chief of police for the Village of Dixmoor, suspended Frank Sanders, a part-time police officer with the Village, with (according to Sanders) this send-off: "Nigger, you're suspended." Sanders sued, summarily recounting the exchange in his skimpy (2–page) complaint and alleging that Falica "did not have any basis, other than plaintiff's race, to order plaintiff's suspension." Sanders further alleged that Falica's outburst and the ensuing suspension "deprived [him] of rights secured by Title VII." The district court granted summary judgment for the Village, finding that Sanders "fail[ed] to satisfy the objective prong of the hostile work environment enquiry, and consequently fail[ed] to demonstrate an actionable claim of racial harassment under Title VII." Central to the court's holding was its conclusion that Sanders was asserting a racial *harassment*, not a racial *discrimination*, claim. On appeal, Sanders says (but inexplicably only in a footnote) that the court incorrectly construed his claim; he was claiming discrimination, not harassment. He does, however, argue repeatedly that Falica's use of "the most noxious racial epithet in the contemporary American lexicon" was direct evidence of racial discrimination.

A plaintiff in an employment discrimination case can avert summary judgment in two ways. First, he can offer enough evidence (whether direct or circumstantial) to create a triable issue of whether the adverse employment action of which he complains had a discriminatory motivation. Or, he can proceed under the *McDonnell Douglas* burden-shifting mode of proving a case. *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1397 (7th Cir.1997). Sanders went the first route. He claimed, though very inartfully, that Falica's statement—"Nigger, you're suspended"—was direct evidence that Falica suspended him because of his race. *Wallace* provides solid support for such a claim.

Robert Wallace, an American, worked for an American subsidiary of a Japanese corporation. After Wallace botched a project, his general manager, David Robinson (also an American), fired him. Shortly before Wallace was fired, the director of the subsidiary, Fusao Takehashi (who was Japanese), said to Wallace: "all Americans are stupid." Wallace sued under Title VII and lost on summary judgment. We affirmed because Wallace demonstrated no link between Takehashi's racially charged insult and Robinson's decision to fire Wallace. Chief Judge Posner, however, with eerie foresight, noted:

> If Takehashi had fired Wallace after making this statement, Wallace would have made out a prima facie case (wholly apart from *McDonnell Douglas*), that is, a strong enough case to go to a jury rather than being resolvable by the grant of a directed verdict to the defendant. *Id.* at 1399.

The district court never considered whether Falica's statement could support a claim of discrimination. Instead, the court analyzed Sanders' claim as one of harassment and concluded that this single incident wasn't enough to alter Sanders' conditions of employment. That conclusion may be right, but the court's analysis plays no role in the assessment of a discrimination claim. Though Sanders should have pushed his discrimination claim with more clarity, we should, nevertheless, be able to easily tease a discrimination claim out of what he did, in fact, allege. And the district court, I think, was wrong to brush the claim off so easily. In addition, the decision to characterize Sanders' claim as one of harassment alone is baffling because the Village moved for summary judgment as if discrimination, not harassment, was alleged. The Village never mentioned harassment. In short, the district court granted summary judgment to the Village on a claim not even *it* recognized and barely addressed the claim both parties

seemed to think was at issue, although admittedly Sanders' counsel did a masterful job of camouflaging what he was trying to do.

Perhaps Sanders should have sought further relief in the district court before turning to us. That, it seems, would have been a wise course to pursue. And of course Sanders would, in any event, face an uphill battle convincing a trier of fact that Chief Falica actually said "Nigger, you're suspended." [1] But if Falica, a white man, used "Nigger," as vile a racial epithet as has ever been uttered, in the same sentence as a suspension order, that, in my view, is enough to create a triable issue as to whether Sanders was suspended because of his race. Accordingly, I dissent.

---

1. The Village conceded, as it had to, Sanders' version of events for purposes of its summary judgment motion, so a credibility issue wasn't before the court.